NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0887n.06

FILED

Dec 30, 2011

LEONARD GREEN, Clerk

Nos. 10-2178/10-2179

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ERNEST RAYMOND LEWIS, JR., and | ) | THE WESTERN DISTRICT OF |
| GERROD MARQUIS JOHNSON, | ) | MICHIGAN |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: MARTIN, SUHRHEINRICH, and COLE, Circuit Judges.

PER CURIAM. Ernest Raymond Lewis, Jr., and Gerrod Marquis Johnson pleaded guilty to conspiracy to commit identity theft, wire fraud, and access device fraud in violation of 18 U.S.C. §§ 371 and 1349. They were also charged with access device fraud in violation of 18 U.S.C. § 1029(a)(2). On appeal, both defendants challenge their sentences. We affirm.

Lewis and Johnson, along with co-defendants Derrick Ingram, Leon Stevens-Moman, and Ameer Spinks, participated in a fraud conspiracy that involved obtaining credit card numbers belonging to other persons, encoding that information onto credit cards and stored value cards, and using those re-encoded cards (or access devices) to make bulk purchases of stored value cards. This process allowed the defendants to launder the fraudulently obtained access devices and make subsequent purchases without detection.

The scheme began to unravel on October 2, 2009, when three of the defendants, Lewis, Ingram, and Stevens-Moman, were involved in a traffic stop and arrested by state law enforcement officers. The officers searched the defendants' car and found stored value cards worth $14,274.09 and re-encoded credit cards. The three men were detained in the Kent County (Michigan) jail, during which time they made several incriminating telephone calls to various individuals, including Johnson. Ultimately, all five defendants were charged with federal fraud and identity theft offenses to which they entered their guilty pleas.

Lewis's presentence report established his base offense level at seven, which was increased by sixteen levels for various enhancements related to the amount of the loss, number of victims, and use of certain devices. *See* USSG § 2B1.1(b). Lewis also received a two level enhancement for obstruction of justice based on a telephone call that he made to his girlfriend from jail in which he instructed her to "take the money and everything out of there." *See* USSG § 3C1.1. After a three-level reduction for acceptance of responsibility, Lewis's total offense level was twenty-two, which, when combined with his criminal history category of I, yielded a sentencing guideline range of forty-one to fifty-one months of imprisonment. The district court overruled Lewis's objection to the obstruction of justice enhancement, adopted the guideline range set forth in the presentence report, and sentenced Lewis to forty-eight months in prison, to be followed by three years of supervised release. The district court also imposed restitution of $52,629.99.

Johnson's presentence report also established his base offense level at seven and added sixteen levels for enhancements related to the amount of the loss, number of victims, and use of certain devices. *See* USSG § 2B1.1(b). In addition, the presentence report applied a four-level enhancement for Johnson's role as an organizer or leader of the conspiracy. *See* USSG § 3B1.1(a). The report did not recommend a reduction for acceptance of responsibility, reasoning that Johnson

had denied elements of the offense during his interview with the probation officer and had minimized his involvement in the crimes. *See* USSG § 3E1.1(a). Johnson objected to the report, asserting that he did not enter the conspiracy until after October 2, 2009, that he was not a leader or organizer, and that he was entitled to a reduction for acceptance of responsibility. The district court overruled these objections, adopted the guideline range set forth in the presentence report, and sentenced Johnson to seventy-eight months in prison, to be followed by three years of supervised release. The district court imposed restitution of $52,629.99.

On appeal, both Lewis and Johnson argue that their sentences are unreasonable because the district court erred in calculating the sentencing guideline range.

We review sentences for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Poulsen*, 655 F.3d 492, 505 (6th Cir. 2011). When reviewing the district court's application of the sentencing guidelines, we review its factual findings for clear error and its legal conclusions de novo. *See United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). A factual finding is clearly erroneous only when "we are left with the definite and firm conviction that a mistake has been made." *Id.* "Sentencing factors are to be determined by a preponderance of the evidence." *Poulsen*, 655 F.3d at 505.

Lewis argues that the district court erred in applying a two-level enhancement for obstruction of justice, which applies when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." USSG § 3C1.1. Obstructive conduct includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." USSG § 3C1.1 cmt.

n.4(D).  Material evidence is evidence that, "if believed, would tend to influence or affect the issue

under determination."  USSG § 3C1.1 cmt. n.6.

Lewis's first argument – that the record does not support a finding that his telephone call to

his girlfriend pertained to the concealment of evidence related to his offense – is belied by his

admission during his presentence interview that he instructed his girlfriend to get rid of fraudulent

credit cards that were at his house.  Lewis's primary argument – that the evidence he was accused

of attempting to conceal or destroy was not "material" because there is no indication that its value

would have been significant enough to affect his total offense level – fares no better.  When the

defendant's conduct occurs after his arrest, as it did in this case, the government must only show that

"it was done with the purpose of interfering with investigation or prosecution of the crime."  *United*

*States v. Perry*, 991 F.2d 304, 312 (6th Cir. 1993); *see United States v. Waldon*, 206 F.3d 597, 608

(6th Cir. 2000).  The relevant inquiry is the defendant's intent, not whether his actions actually

changed the outcome of the investigation or prosecution.  *See Waldon*, 206 F.3d at 608-09.

Accordingly, the district court did not err by applying the obstruction of justice enhancement to

Lewis.

Johnson challenges the calculation of his guideline range on three grounds, arguing that the

district court erred by holding him responsible for the entire loss from the conspiracy, by applying

a leadership enhancement under § 3B1.1(a), and by denying him credit for acceptance of

responsibility.

A defendant's base offense level is increased by four points if the district court finds that "the

defendant was an organizer or leader of a criminal activity that involved five or more participants

or was otherwise extensive."  USSG § 3B1.1(a).  Although it is well established that we review for

clear error the factual findings underlying a § 3B1.1(a) enhancement, there is "some debate" in this

circuit as to whether the district court's legal conclusions are subject to de novo review or a more deferential standard. *See United States v. Walls*, 546 F.3d 728, 734 (6th Cir. 2008). Because the district court's imposition of the leadership enhancement was proper under either standard, we need not decide that issue here. *Id*.

Johnson argues that the evidence fails to show that he was a leader of the conspiracy or that he was even involved in the conspiracy before October 2, 2009. He emphasizes that his only recorded involvement took place after this date and that his co-defendants denied that he was their leader. However, there is ample evidence in the record to support the district court's determination that Johnson was the leader of the conspiracy. As the district court noted, there is significant circumstantial evidence of Johnson's leadership role, including his frequent cell phone contacts with the other defendants when they were purchasing the stored value cards and his apparent control over the encoding device. In addition, Ingram's girlfriend, Nichelle Herdon, referred to Ingram as Johnson's "right-hand man" and told case agents that Ingram received service value cards from "Tweet," who she identified in a photograph as Johnson. This evidence is consistent with the description of Johnson's leadership role given by a bail bondsman, Ron Fleming, who testified at Johnson's sentencing hearing. According to Fleming, Stevens-Moman stated that he worked on a crew for Johnson, that the crew would give half of its proceeds to Johnson, and that the remaining half would be divided among the three crew members. Fleming testified that Johnson offered to provide him with fraudulent credit cards in exchange for a $2000 investment. Although Johnson challenges Fleming's credibility, we find no clear error in the district court's decision to credit Fleming's testimony and to discredit the denials of Johnson and his co-defendants. Accordingly, the four-level enhancement under § 3B1.1(a) was appropriate.

Based on this determination, we reject Johnson's argument that the district court should not have held him accountable for the conspiracy's total loss amount. Although Johnson argues that the district court failed to make specific findings as to when he joined the conspiracy and the amount of loss for which he should be held accountable, the district court clearly determined that, as the leader of the conspiracy, Johnson was involved from its inception and thus should be held accountable for the entire loss. *See United States v. Wilson*, 168 F.3d 916, 925 (6th Cir. 1999). Based on the evidence presented, the district court did not err by finding that Johnson joined the conspiracy prior to October 2, 2009, and by holding him responsible for the total loss. *See* USSG § 2B1.1(b)(1).

Finally, Johnson challenges the district court's decision not to grant him a reduction for acceptance of responsibility, a determination that we review for clear error. *See United States v. Kathman*, 490 F.3d 520, 524 (6th Cir. 2007). A guilty plea does not automatically entitle a defendant to a reduction in his sentence for acceptance of responsibility. *Id*. A district court's determination regarding acceptance of responsibility "is entitled to great deference on review." *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011); *see* USSG § 3E1.1 cmt. n.5 ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.")

In denying Johnson credit for acceptance of responsibility, the district court explained that, although Johnson pleaded guilty, he subsequently sought to downplay his culpability; claimed that he pleaded guilty to benefit his friends; and felt that he would not receive a fair trial. The district court also noted the evidence of Johnson's leadership in the conspiracy, concluding that Johnson had "no credibility" and that "the story that is being spun here negates any acceptance of responsibility." Based on these findings, the district court did not err in denying Johnson credit for acceptance of responsibility. *See United States v. Lay*, 583 F.3d 436, 448 (6th Cir. 2009) ("Denial of the reduction

for acceptance of responsibility is proper if the court believes the defendant testified untruthfully."

(citation and alteration omitted)).

For these reasons, we affirm both defendants' sentences.