NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0093n.06

Case No. 14-1042

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 30, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CHARLES FINLEY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:  SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

SUTTON, Circuit Judge.  Charles Finley and several cohorts used cards encoded with stolen credit card numbers to make fraudulent purchases at Meijer stores in Grand Rapids, Michigan.  Finley pled guilty to conspiracy to commit wire fraud and aggravated identity theft. After enhancing Finley's advisory sentencing range based on his leadership role, the scheme's sophistication, and the number of victims, the district court sentenced him to a 126-month prison term.  Finley challenges his plea and sentence.  Finding no error, we affirm.

I.

A federal grand jury indicted Charles Finley and several others for crimes arising from nearly a year of credit card fraud.  According to the indictment, Finley stole numerous unactivated stored-value cards (SVCs) from a Rite Aid store in August 2011.  The indictment

does not mention what became of the cards, but months later Finley used similar cards encoded with stolen credit card numbers ("cloned" cards) to make tens of thousands of dollars in fraudulent purchases at Meijer stores in Grand Rapids. Count I charged Finley with conspiracy to commit wire fraud. *See* 18 U.S.C. §§ 1343, 1349. Count III charged him with aggravated identity theft "during and in relation to" that fraud. *Id.* § 1028A.

Finley pled guilty to both counts, and the district court sentenced him to 126 months.

II.

On appeal, Finley challenges the validity of his convictions on the ground that the district court failed to establish a sufficient "factual basis" for his guilty plea. *See* Fed. R. Crim. P. 11(b)(3). His wire-fraud conspiracy conviction must fall, he maintains, because there is no evidence that he knowingly used the wires. So, he adds, must his aggravated identity-theft conviction fall because there is no evidence that he used a real person's identity, as opposed to an invented one. Because Finley did not raise these arguments below, we review them for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002).

Finley's plea did not contain any error, plain or otherwise. The factual-basis requirement of Criminal Rule 11 protects defendants from pleading guilty "without realizing that [their] conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (internal quotation marks omitted). A defendant's own account of the crime that establishes the elements of the offense satisfies the requirement. *See United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995). Just that happened here.

To prove a wire-fraud conspiracy, the government must show an overt act in furtherance of an agreement to commit wire fraud, which requires (1) willful participation in a scheme to defraud, (2) use of interstate wires in furtherance of the scheme, and (3) the intent to deprive the

victim of money or property. *United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012). Use of the wires, the sole element contested here, "need only be . . . reasonably foreseeable as a result of the defendant's actions." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997) (internal quotation marks omitted). Finley's own description of the offense meets that requirement, as he admittedly "conspired to use other people's credit cards," R. 292 at 21, and "in using a credit card it is foreseeable that interstate communications will be used to obtain" approval for purchases, *United States v. Vanover*, 815 F.2d 81, 1987 WL 36406, at *1 (6th Cir. 1987) (unpublished table decision).

Finley protests that a conviction for wire-fraud *conspiracy* differs because it requires proof that he *knew* the scheme entailed use of the wires, not just that such use was foreseeable. Not so. Finley's knowledge "is relevant to the same issues and to the same extent as it [is] for conviction of" wire fraud itself. *United States v. Feola*, 420 U.S. 671, 695 (1975). Nothing requires that he "have a greater degree of knowledge" about use of the wires in the context of a conspiracy charge. *Id.* at 687. Foreseeability suffices. *United States v. Reed*, 721 F.2d 1059, 1060–61 (6th Cir. 1983).

The plea colloquy also supports Finley's aggravated identity-theft conviction, which requires proof he "*knowingly* transfer[red], possesse[d], or use[d], without lawful authority, *a means of identification of another person*." 18 U.S.C. § 1028A(a)(1) (emphasis added). The italicized language requires a showing that Finley knew that the stolen account numbers belonged to real people. *See Flores-Figueroa v. United States*, 556 U.S. 646, 657 (2009). No problem there: Finley admitted to using "other people's" accounts. R. 292 at 21. And when the district court asked whether there were "other people's credit card information . . . logged onto" the cards Finley used, Finley replied, "Yes." *Id.* at 22.

3

III.

Finley attacks his sentence on five separate grounds. None hits the mark.

*The statutory maximum.* Finley claims that his 102-month sentence for Count I is illegal because he was found guilty of conspiracy to defraud the United States, which carries a maximum penalty of only 60 months. *See* 18 U.S.C. § 371. As proof, Finley points to the judgment, which labels Count I as "Conspiracy to Defraud the United States." R. 277 at 1. But referencing the wrong crime in a judgment amounts to a clerical error, correctible by the trial court or on appeal. *See* Fed. R. Crim. P. 36; *United States v. Davis*, 707 F.2d 880, 884 (6th Cir. 1983); *United States v. Barnes*, 313 F.2d 325, 327–28 (6th Cir. 1963); *see also* 3 Charles Alan Wright & Sarah N. Welling, *Federal Practice and Procedure* § 641, at 770 (4th ed. 2011). The record confirms the district court found Finley guilty of conspiracy to commit wire fraud, punishable by up to 240 months in jail—far above his sentence. *See* 18 U.S.C. §§ 1343, 1349. The indictment, plea agreement, plea colloquy, magistrate's Report & Recommendation, and sentencing transcript all describe wire fraud, and none says anything about fraud against the United States. The court's unambiguous oral judgment sentencing Finley for wire fraud controls. *See United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008). The written judgment thus reflects a mistake "merely of recitation[,] . . . mechanical in nature." *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004).

Finley offers two rejoinders. He first invites us to construe the judgment in his favor under the rule of lenity. But that interpretive canon applies to ambiguous *statutes*, not to judgments or orders. *See United States v. Booth*, 551 F.3d 535, 541 (6th Cir. 2009). Finley next attempts to distinguish clerical-error cases like *Barnes* because, at the very end of Count I, the indictment cites the U.S. Code section for fraud against the United States. This purportedly

4

suggests that the error in the judgment is more than clerical. We disagree. All this shows is another typo, this time in the indictment. Again, Count I describes wire fraud in detail, cites the correct code sections, and gives no hint that the United States was a victim. The extraneous code citation does not muddy the judgment's evident intent.

*The sophisticated-means enhancement.* Finley objects to the two-point enhancement to his offense level for use of "sophisticated means," U.S.S.G. § 2B1.1(b)(10)(C), which we review for clear error, *see United States v. Kraig*, 99 F.3d 1361, 1371 (6th Cir. 1996). The enhancement applies to conduct that is "especially complex or especially intricate." U.S.S.G. § 2B1.1 cmt. 9(B). Finley maintains that this type of credit card fraud scheme is so well-known that it is no more sophisticated than ordinary retail fraud. We see it differently. Perhaps no individual step of Finley's conspiracy is sophisticated, but a scheme may be sophisticated even when none of its component parts standing alone is complex or intricate. *See United States v. Masters*, 216 F. App'x 524, 525 (6th Cir. 2007). Finley and his coconspirators: (1) traveled to the Western District because the stores there were less familiar with this type of fraud; (2) switched license plates; (3) stole unactivated stored-value cards; (4) converted them into cloned credit cards (either by encoding the cards themselves or outsourcing the job); (5) bought store gift cards at self-checkout lanes to avoid detection; (6) used the seemingly legitimate gift cards to buy expensive electronics; and (7) sold the loot. Facing a nearly identical credit card fraud scheme, we upheld the sophisticated means enhancement "given the cross-jurisdictional conduct and technical knowledge necessary to commit the offense." *United States v. Shifu Lin*, 508 F. App'x 398, 403 (6th Cir. 2012). Both features exist here. Finley may not have handled the card encoding, the scheme's most advanced step, but he is still responsible for it because, judging by

his theft of unactivated (otherwise useless) SVCs, that step "was reasonably foreseeable to him." *United States v. Crosgrove*, 637 F.3d 646, 666 (6th Cir. 2011).

Finley suggests the Sentencing Commission's recent proposal to limit the sophisticated-means enhancement to the defendant's own conduct shows the commission rejects the foreseeability rule announced in *Crosgrove*. *See* Notice of Proposed Amendments to Sentencing Guidelines, Policy Statements, and Commentary, 80 Fed. Reg. 2,570, 2,588–89 (Jan. 16, 2015). In contrast to that rule, the proposed new wording of U.S.S.G. § 2B1.1(b)(10)(C) would apply the enhancement only if "the defendant engaged in or caused the conduct constituting sophisticated means." *Id.* at 2,589. "[C]larifying amendments may be applied retroactively to discern the Sentencing Commission's intent regarding the application of a pre-amendment guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007). As a clarifying amendment, the argument goes, this proposal reveals the Sentencing Commission's understanding of the leadership guideline. But any such inference is premature here. The commission has not adopted the change yet. Even assuming a nascent proposal might tell us something about the commission's intent, this proposed change is not a mere clarification. All signs point to a substantive amendment: The commission characterizes it as a "revis[ion]" that "narrows the scope" of the enhancement; it alters the language of the guideline itself, not just the commentary; and it frames none of this as resolving an ambiguity in the current wording. *See* 80 Fed. Reg. at 2,589; *Geerken*, 506 F.3d at 465. The proposal thus tells us little (if anything) about how the commission interprets the sophisticated-means enhancement as it now stands.

*The leadership-role enhancement.* Finley also challenges the four-level enhancement for his role as an "organizer or leader" of a scheme "involv[ing] five or more participants." U.S.S.G. § 3B1.1(a). He initially argued that the district court misapplied this enhancement by

crediting unreliable statements from codefendants Sharonique Pointer and Donald Peterson, who identified Finley as the leader. At oral argument, however, Finley conceded this argument lacks merit—and with good reason. Their independent statements corroborate each other. *See United States v. Hunt*, 487 F.3d 347, 353 (6th Cir. 2007). And codefendant Mark Houston's statement that Finley recruited him, provided the fraudulent cards, and paid him cash for his trouble confirms Finley's leadership role. *See United States v. Lewis*, 444 F. App'x 882, 885–86 (6th Cir. 2011).

Finley insists the leadership enhancement remains unwarranted because he led only three others, not the required five. This argument flies wide of the mark because the enhancement applies even when the defendant leads just *one* participant so long as the *scheme* includes five. *See* U.S.S.G. § 3B1.1 cmt. 2; *United States v. Robinson*, 503 F.3d 522, 529 (6th Cir. 2007). Here there were at least seven other participants.

*The victim enhancement.* For the first time on appeal, Finley objects to a four-level enhancement for the 167 victims caught up in the scheme, *see* U.S.S.G. § 2B1.1(b)(2)(B), which we review for plain error, *see United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). He claims the victim count should include only the banks that suffered a financial loss, not the account holders reimbursed by their card issuers for fraudulent charges. The general rule indeed requires monetary or bodily harm to count as a victim. *See* U.S.S.G. § 2B1.1 cmts. 1 & 3(A)(i); *United States v. Stubblefield*, 682 F.3d 502, 510–13 (6th Cir. 2012). In identity-theft cases, however, the "victims" include "any individual whose means of identification was used unlawfully or without lawful authority." U.S.S.G. § 2B1.1 cmt. 4(E). No one disputes that credit card account numbers are a means of identification for purposes of this guideline, making the victim count accurate. In response, Finley points to *United States v. Yagar*, 404 F.3d 967,

970–71 (6th Cir. 2005), which held that account holders promptly reimbursed by their banks were not victims because they suffered no actual loss. But *Yagar* predates the new definition of "victim" adopted in 2009 for identity-theft cases, making that holding irrelevant. *See United States v. Tragas*, 727 F.3d 610, 620 (6th Cir. 2013).

*Substantive reasonableness.* Finley claims that the district court's near-the-bottom-of-the-guidelines sentence is "greater than necessary" to serve the goals of sentencing, *see* 18 U.S.C.A. § 3553(a), due to the difference between his sentence and the sentences of the others. On appeal, we presume a within-guidelines sentence is reasonable. *See Vonner*, 516 F.3d at 389. Finley has not rebutted that presumption. District judges are "not required to consider the disparity between the sentences of co-defendants." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). Finley, as a leader, was at any rate more culpable than his fellow conspirators. The differences in the sentences were justified and earned.

For these reasons, we affirm.