NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0127n.06

Nos. 15-5166/5184/5204

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 03, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA, )
)
    **Plaintiff-Appellee,** )
)
                               ) **ON APPEAL** FROM THE
v. ) UNITED STATES DISTRICT
) COURT FOR THE EASTERN
DAVID L. PIERCE (15-5166); ) DISTRICT OF KENTUCKY
TIMOTHY RICHARD SMITH (15-5184), )
and DWAYNE RAY SMITH (15-5204), )
)
    **Defendants-Appellants**. )

BEFORE: NORRIS, CLAY, and COOK, Circuit Judges.

    **ALAN E. NORRIS, Circuit Judge.** Brothers Timothy and Dwayne Smith, along with David Pierce, appeal the sentences that they received for defrauding the federal government by submitting fictitious tax returns. All three defendants pleaded guilty. On appeal, they each contend that the district court erred when it increased their base offense level because "the offense . . . involved sophisticated means." U.S.S.G. § 2B1.1(b)(10)(C). We now affirm.

**I.**

    Defendants were charged in 2014 with a number of counts related to their tax-fraud conspiracy. Each of them pleaded guilty to three of those counts: conspiracy to defraud the United States, 18 U.S.C. § 286; wire fraud, 18 U.S.C. § 1343; and aggravated identity theft, 18 U.S.C. § 1028A. Of the three appellants, the instigator of the conspiracy was David Pierce. He filed a false tax return in 2009 using the vital statistics of his minor son for the 2008 tax year. Pierce was assisted by the two other defendants. The ploy succeeded and co-defendant Dwayne

Smith received a check for $41,602 from the Internal Revenue Service ("IRS"). The three defendants shared the proceeds.

Buoyed by this success, Pierce filed false tax returns in the names of other individuals. His typical approach was to use addresses in Las Vegas and claim income from local businesses. Pierce managed to obtain refunds of $305,007 for co-defendant Dwayne Smith and $289,770 for co-defendant Stephen Woodrum, who is not a party to this appeal. Other individuals were recruited and promised a share of their fraudulent return. Although Pierce submitted false returns for others, their claims were not paid by the IRS.

As mentioned earlier, each of the appellants entered into plea agreements to three counts. These agreements included a provision that, despite a general waiver of appeal, they could pursue a challenge to the application of the "sophisticated means" guideline.

**II.**

Section 2B1.1(b)(10)(C) provides in part that if "the offense . . . involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." Application Note 9 of the commentary includes the following guidance: "'[s]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1, cmt. n.9. For instance, "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." *Id.* This court has read this guideline section more broadly: while "no individual step of [defendant's] conspiracy is sophisticated, . . . a scheme may be sophisticated even when none of its component parts standing alone is complex or intricate." *United States v.*

2

*Finley*, 600 F. App'x 964, 967 (6th Cir. 2015) (citing *United States v. Masters*, 216 F. App'x 524, 525 (6th Cir. 2007)).

We review the district court's findings of fact at sentencing for clear error and its legal conclusions regarding the Sentencing Guidelines *de novo*. *United States v. Hodge*, 805 F.3d 675, 678 (6th Cir. 2015). This Court, along with several other circuit courts, considers the sophisticated means enhancement to be a factual finding and therefore we review it for clear error. *Finley*, 600 F. App'x at 967 (citing *United States v. Kraig*, 99 F.3d 1361, 1371 (6th Cir. 1996)); *United States v. Beckman*, 787 F.3d 466, 496 (8th Cir. 2015); *United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014); *United States v. Sykes*, 774 F.3d 1145, 1153 (7th Cir. 2014).

Given that the three defendants participated in the fraudulent scheme to varying degrees, and were sentenced separately, we will inquire whether the sophisticated means enhancement applies to each defendant individually.

David Pierce

Defendant's Presentence Report ("PSR") did not recommend that he receive a two-level enhancement for using sophisticated means to commit his crimes. The government objected, arguing that the enhancement was warranted by Mr. Pierce's fabrication of out-of-state jobs to support the false claims of income filed with the IRS, and the creation and filing of fictitious W-2 forms to support these claims.

At the sentencing hearing, the government conceded that "each of those components [of the conspiracy] standing alone is not a sophisticated crime." That said, government counsel contended that the conspiracy must be seen as a whole, not as individual parts, and, in this case, the "conspiracy was sophisticated enough to deceive the IRS into paying over $600,000 in income tax refunds." Counsel characterized this court's decision in *United States v. Kopietz*,

126 F. App'x 708 (6th Cir. 2005), as supporting a sophisticated means enhancement even when the defendants submitted "a number of claims to the IRS, and didn't get back a dime."

For its part, the district court provided the following reasoning to justify the enhancement:

> This case reminds me of the old saying that pigs get fat and hogs get slaughtered. With regard to the 2008 returns, at least a couple of folks were getting pretty fat, but eventually their greed caught up. Others got on board and [it] became apparent that these were, in fact, false and fraudulent returns, and hogs got slaughtered in this particular case as a result of and part of their own greed.
>
> . . . .
>
> When we look at the totality of the circumstances here as outlined in the presentence report, the factual section, as well as the facts that I've summarized, and those that are set forth in the memorandum filed by the United States, I do agree that with regard to Mr. Pierce that the sophisticated means enhancement should be applied . . . .

In his brief to this court, defense counsel has the unenviable task of painting his client as inept. For instance, he pointed out that Mr. Pierce routed money through his own bank account, failed to disguise his identity, and made no use of sophisticated financial ploys, such as using offshore accounts or dummy corporations.

While we may perhaps agree with defense counsel that Mr. Pierce did not devise a particularly complex scheme, we nevertheless are unable to find clear error in the district court's reasoning and therefore affirm the enhancement. As the government noted, Mr. Pierce created fictitious jobs and W-2 forms which ultimately resulted in over $600,000 in illegal gain.

<u>Timothy Smith</u>

As detailed in his PSR, Timothy Smith helped Mr. Pierce with his tax-fraud scheme. Specifically, he assisted Pierce in filing the fraudulent tax return of Pierce's son. He also passed along social security numbers to Pierce.

The district court concluded that the sophisticated means enhancement was appropriate to Timothy Smith:

> [I]t is clear to the Court that this is not the typical tax fraud case. There were sophisticated means that were used throughout the course of the conspiracy, and that Timothy Smith was involved not only early on in the conspiracy with these first few returns, but he was involved later, as late as June of 2010.
>
> So he had extensive involvement. He had knowledge. He had specific . . . knowledge, and it's foreseeable that the information that was being placed on the returns by the co-defendant, Mr. Pierce, . . . was reasonably foreseeable. . . .

As with Mr. Pierce, we find no clear error in the district court's decision. Mr. Smith actively participated in the tax-fraud scheme, provided social security numbers to Mr. Pierce, and took steps to conceal his identity.

Dwayne Smith

At Dwayne Smith's sentencing hearing, the government called Jared Volk, a special agent with the IRS involved in criminal investigations. He testified that a U.S. Bank statement for Dwayne's account included a deposit of his fraudulent tax refund. It also reflected a transfer of $200,000 to the Bellagio Casino in Las Vegas. In his plea agreement, Dwayne conceded that he received $200,000 of the $305,007 refund that Mr. Pierce obtained for him. Mr. Volk also testified that Dwayne's transfer of money between accounts was consistent with an attempt to conceal its origins.

The district court enhanced Dwayne's offense level based upon his use of sophisticated means. In reaching this conclusion the court once again considered "reasonably foreseeable" conduct. It found that Dwayne "was involved from the outset of the scheme using Mr. Pierce." It also went on to discuss the scope of defendant's knowledge:

> [T]his defendant did have knowledge of the nature of the scheme. Perhaps not all the details but certainly the nature of the scheme from the very outset. . . .
>
> . . . .

> The Court . . . not only looks at the defendant's individual knowledge and involvement, but we also look at what the defendant did to conceal the assets once they were received.
>
> And in this particular case, this defendant did transfer moneys in and out of this account in order to avoid detection.
>
> He also advised, at least one other person, that this sudden wealth was a result of winnings in Las Vegas, and so he was making an effort to indicate to members of the public that this was not money acquired by fraud.

The court went on to find that based upon the extent of his involvement, his attempts to avoid detection, and his knowledge of the scheme that the enhancement should apply.

The facts of the case are not disputed. The question is simply whether the district court clearly erred when it concluded that the plan was sufficiently sophisticated. We conclude that it did not.

### III.

The judgments are **affirmed**.

6