**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4779
_____

UNITED STATES OF AMERICA

v.

RAMIL KISMAT,
                    Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:11-cr-00301-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)

June 13, 2014

Before: AMBRO and BARRY, <u>Circuit</u> <u>Judges</u>, and RESTANI,[1] <u>Judge</u>.

(Opinion Filed: June 20, 2014)
_____

OPINION
_____

RESTANI, <u>Judge</u>

Appellant Ramil Kismat appeals his conviction for bank fraud and wire fraud as

well as various aspects of his sentence.  For the reasons stated below, we will affirm.

---

[1] The Honorable Jane A. Restani, Judge of the United States Court of International Trade,
sitting by designation.

1

I.

Appellant Kismat and his co-defendant at trial Sergey Sorokin (together, "the defendants") were charged with bank fraud in violation of 18 U.S.C. § 1344 (2012), wire fraud in violation of 18 U.S.C. § 1343, identity theft in violation of 18 U.S.C. § 1028(a)(7), and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The defendants allegedly used numerous compromised credit and debit card numbers over a period of several months to make purchases at various retail establishments, mostly in Pennsylvania. Despite counsel's arguments at trial that the defendants were unaware that the cards used to make those purchases were encoded with compromised account numbers, a jury convicted Kismat and Sorokin on the bank fraud and wire fraud charges.[2] Kismat ultimately was sentenced to 64 months of incarceration.

Kismat raises seven issues on appeal. Specifically, he claims that: (1) the district court committed reversible error by providing a "willful blindness" instruction; (2) the court committed plain error by failing to give a jury instruction regarding the good faith defense; (3) the court committed plain error in its bank fraud jury instruction; (4) the cumulative error of the failure to instruct the jury on the good faith defense and the deficiency in the bank fraud instruction warrants reversal; (5) there was insufficient evidence presented at trial to prove that Kismat had the requisite mens rea to commit bank fraud and wire fraud; (6) the court erred in its calculation of the intended loss for

---

[2] Sorokin's appeal of his sentence is docketed as case number 13-3955.

purposes of sentencing; and (7) the court erred in its calculation of the number of victims for purposes of sentencing. We will address each claim in turn.[3]

## II.

Kismat first claims that the district court erred by providing a "willful blindness" instruction to the jury. He argues that the evidence at trial did not warrant that instruction. We review a challenge to the district court's determination that the evidence supported the giving of a willful blindness instruction for abuse of discretion. United States v. Stadtmauer, 620 F.3d 238, 252 (3d Cir. 2010). In determining whether the evidence was sufficient to warrant the instruction, we view the evidence and reasonable inferences derived therefrom in the light most favorable to the government. Id. The evidence here was sufficient to warrant the instruction.

Kismat claimed at trial, and continues to argue, that he did not know that the cards he was using contained compromised account information. Evidence presented at trial, however, indicated that Kismat was not using the cards in good faith, or at best, consciously avoided learning about the propriety of the cards. On several occasions, he drove from the New York/New Jersey area to central Pennsylvania to use the cards at common retailers such as Target. He would make a handful of transactions at the store, using multiple cards and often switching registers, and then would move on to another store where he would repeat the same activity. The purchases were often prepaid Visa or

---

[3] The district court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction over Sorokin's conviction under 28 U.S.C. § 1291 and sentencing under 18 U.S.C. § 3742(a).

MasterCard gift cards that required an additional activation fee. Kismat told police that he liked to use these prepaid cards to purchase other merchandise; but by engaging in the additional step of purchasing the prepaid gift cards instead of using his own supposedly legitimate card to purchase the merchandise directly, Kismat was wasting money because he had to incur the additional activation fees. Taken together, Kismat's defense that he was unaware that the cards he was using were fraudulent and his actions indicating that he was trying to obscure his use of the cards to obtain items of value warranted giving the jury a willful blindness instruction. See United States v. Wert-Ruiz, 228 F.3d 250, 256–58 (3d Cir. 2000) (holding that denial of knowledge regarding true nature of money laundering scheme combined with actions taken to conceal involvement in the scheme was sufficient to warrant willful blindness instruction).[4]

## III.

Kismat next argues that the district court committed plain error by failing to instruct the jury on the good faith defense. He correctly notes that the existence of good faith negates the intent-to-defraud element required for bank fraud and wire fraud. See United States v. Jimenez, 513 F.3d 62, 75 (3d Cir. 2008); United States v. Al Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004). Reversal under the plain error standard is warranted

---

[4] Kismat also argues in his reply brief that the instruction was erroneous because it did not include any language that advised the jury that it was permitted, but not required, to draw any inferences from the evidence on this issue. Because this argument was not raised in his opening brief, we will not consider it. See Ethypharm S.A. Fr. v. Abbott Labs., 707 F.3d 223, 231 n.13 (3d Cir. 2013). In any event, we note that the district court instructed that the jury "may" find the knowledge requirement met by evidence proving willful blindness beyond a reasonable doubt.

4

only if there is (1) an error, (2) that is plain, (3) the error affects substantial rights, and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Bobb, 471 F.3d 491, 500 (3d Cir. 2006) (internal quotation marks and brackets omitted).

We have upheld refusals to give a separate good faith instruction when the instructions, "taken as a whole, adequately define[] the elements of the crime, including the intent requirement, thereby making a good faith instruction unnecessary and redundant." United States v. Leahy, 445 F.3d 634, 651 (3d Cir. 2006). The district court defined the elements of each crime, including the requirement that Kismat act with an intent to defraud, which the district court defined as "knowingly and with the intention or the purpose to deceive or to cheat." Acting "with the intention or the purpose to deceive or to cheat" is incompatible with acting in good faith, and thus it was unnecessary for the district court to give an additional good faith instruction. See id. at 644, 651–52 (holding that the district court did not abuse its discretion by refusing to give a good faith instruction when the court instructed the jury on the intent element and described "intent to defraud" as acting "knowingly and with the purpose to deceive or to cheat"). Thus, we find no error in the failure to give a separate good faith instruction.

IV.

Kismat also argues that the district court committed plain error in instructing the jury on the elements of bank fraud. 18 U.S.C. § 1344 provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—

5

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The district court instructed the jury that to find the defendants guilty, the government had to prove each of the following beyond a reasonable doubt:

First that . . . Ramil Kismat and/or Sergey Sorokin knowingly executed a scheme to obtain the money, funds, or other property owned by or under the control of [the allegedly victimized financial institutions] by means of material false or fraudulent pretenses, representations, or promises as detailed in Count 1 of the indictment, second, that Ramil Kismat and Sergey Sorokin did so with the intent to defraud these institutions, and third, that any of these financial institutions were then insured by the Federal Deposit Insurance Corporation.

Kismat asserts that the district court impermissibly combined the two allegedly distinct subsections of § 1344 into a single count and failed to instruct the jury that it had to reach a unanimous verdict as to which of the separate sections he allegedly violated. There was no improper conflation of distinct subsections. Our caselaw makes clear that intent to defraud a financial institution is an element of both subsections (1) and (2). See Leahy, 445 F.3d at 642–43; United States v. Thomas, 315 F.3d 190, 196–99 (3d Cir. 2002). The instructions here required that the jury find all of the elements of subsection (2), and thus it is apparent that Kismat was convicted under § 1344(2). There was no error in the instruction.

6

V.

For the reasons stated above, we reject Kismat's claim that the combination of the failure to instruct on the good faith defense and the alleged deficiencies in the bank fraud instruction amounted to plain error warranting reversal.

VI.

Kismat next claims that there was insufficient evidence of his fraudulent intent to support the bank fraud and wire fraud convictions. In reviewing whether the evidence was sufficient to support a guilty verdict, "[w]e must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Leahy, 445 F.3d at 657 (internal quotation marks omitted).

The guilty verdict was supported by sufficient evidence. Kismat argues that the evidence showed that he acted in good faith and describes his shopping patterns as merely an "oddity." From the evidence described above, the jury was entitled to disagree and conclude that Kismat in fact was attempting to conceal his use of the cards containing the compromised account information, which is hardly consistent with his claim that he was using the cards in good faith.

VII.

Kismat also argues that the district court's intended loss finding of $432,118.29, which equaled the aggregate credit limit of the compromised accounts used, is unsupported by the evidence. He claims that he had no knowledge as to the actual credit

7

limits of the cards, neither defendant admitted to intending to use the cards to their limits, not all of the cards were used until they were declined, and there was no evidence showing how he obtained the compromised accounts that would shed any light on his intent.

The loss to be used for sentencing purposes shall be "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 n.3(A) (2013). "Intended loss" means (I) "the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur." Id. § 2B1.1 n.3(A)(ii). A district court errs by simply equating the intended loss of a credit card fraud scheme with the cards' aggregate credit limit without "'deeper analysis.'" United States v. Diallo, 710 F.3d 147, 151 (3d Cir. 2013) (quoting United States v. Geevers, 226 F.3d 186, 192 (3d Cir. 2000)). The facts of the case must support a finding that the aggregate credit limit was the intended loss. Id. Even though a defendant might not expect to cause the entirety of the potential loss (here, the aggregate credit limit), "expectation is not synonymous with intent when a criminal does not know what he may expect to obtain, but intends to take what he can." Geevers, 226 F.3d at 193. A district court may find that a defendant intended to cause the entirety of the potential loss, even if the actual loss is much lower, if the failure to cause the entirety of the potential loss is due to third-party intervention or the defendant's desire to avoid detection. See id. (approving the use of the face value of worthless checks used in a "check kiting" scheme as the intended loss,

8

despite acknowledging that a check kiter "will either abscond or be discovered before exhausting the kite").

The district court engaged in the "deeper analysis" our cases require. The court cited Diallo and Geevers in explaining its intended loss finding and gave specific reasons for its conclusion. Based on the evidence presented, the court found that had the defendants, as a practical matter, been able to charge each of the accounts to its limit before being detected, they would have done so. A majority of the cards were used multiple times unless or until they were declined. For those cards that were not used until they were declined, the district court found that the defendants discontinued their use in order to avoid detection of their scheme. This finding is consistent with the evidence showing the defendants' rather extensive steps to conceal their use of the compromised accounts, such as traveling long distances to make purchases, engaging in only a handful of transactions at each store, and switching registers. The district court thus did not clearly err when it found that the defendants, had it been feasible, would have charged up to the credit limit on each account. See id.

## VIII.

Kismat's final claim is that the district court erred by applying a four-level enhancement under the Sentencing Guidelines based upon a finding that the offense involved fifty or more victims. See U.S.S.G. § 2B1.1(b)(2)(B). Kismat argues that only the financial institutions should be considered victims because they were the only ones who suffered pecuniary loss; the individual account holders likely did not suffer any

9

actual loss, because they presumably were reimbursed by their banks. To support his position, Kismat relies on United States v. Kennedy, 554 F.3d 415 (3d Cir. 2009). Kennedy, however, was decided before the definition of "victim" for purposes of U.S.S.G. § 2B1.1(b)(2)(B) was amended. Under U.S.S.G. § 2B1.1(b)(2)(B), "victim" now includes "any individual whose means of identification was used unlawfully or without authority." U.S.S.G. § 2B1.1(b)(2)(B) n.4(E). "Means of identification" for purposes of U.S.S.G. § 2B1.1 is defined in 18 U.S.C. § 1028(d)(7), and includes any "access device." See U.S.S.G. § 2B1.1 n.1. An "access device" is:

> any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds.

18 U.S.C. § 1029(e). Credit card and debit card account numbers clearly fall within the definition of "access device" as "account numbers" that can be used "to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds." Each individual account holder whose account number was used unlawfully or without authority therefore was a "victim," and the district court correctly found that there were more than fifty such victims in this case. The four-level enhancement thus was proper.

## IX.

For the reasons set forth above, we will affirm.

10