15-1991-cr
United States v. Wilson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND  THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 26ᵗʰ day of July, two thousand sixteen.

Present:     ROSEMARY S. POOLER,
             ROBERT D. SACK,
             GERARD E. LYNCH,
                    *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                    *Appellee*,

              v.                                                    15-1991-cr

ANAS K. WILSON,

                    *Defendant-Appellant*.

_____

Appearing for Appellant:     Lisa A. Peebles, Federal Public Defender (Melissa A. Tuohey, Appellate Attorney, *on the brief*), Office of the Federal Public Defender, Syracuse, NY.

Appearing for Appellee:      Michael F. Perry, Assistant United States Attorney, *for* Richard S. Hartunian, United State Attorney for the Northern District of New York, Syracuse, NY.

Appeal from the United States District Court for the Northern District of New York (Scullin, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Defendant-appellant Anas K. Wilson appeals from the June 22, 2015 judgment of the United States District Court for the Northern District of New York (Scullin, *J.*), sentencing Wilson principally to 144 months' imprisonment on his conviction of one count of theft of government property, in violation of 18 U.S.C. § 641, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A. Count One, theft of government property, carried a statutory maximum of 10 years' imprisonment; Count Two, aggravated identity theft, required a mandatory consecutive two year term of imprisonment. The district court calculated the Guidelines range for Count One to be 168 to 210 months' imprisonment, and sentenced Wilson to the statutory maximum of ten years' imprisonment on Count One and the mandatory minimum of a consecutive two years' imprisonment on Count Two. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Wilson challenges his sentence as procedurally and substantively unreasonable. We review a sentence for procedural and substantive reasonableness under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "A sentence is *procedurally* unreasonable if the district court 'fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence.'" *United States v. Aldeen*, 792 F.3d 247, 251 (2d Cir. 2015) (quoting *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013)). "Once we have determined that the sentence is procedurally sound, we then review the substantive reasonableness of the sentence . . . ." *United States v. Dorvee*, 616 F.3d 174, 179 (2d Cir. 2010).

Wilson's challenge primarily hinges on the district court's conduct at sentencing. The sentencing proceeded as follows. Addressing Wilson, the court first stated, "The Court has received a presentence investigation report [("PSR")], as well as the sentencing memoranda from both your attorney and the government, as well as some letters that were attached to the memoranda from your attorney. Having reviewed all that and reviewed the pertinent information relevant to sentencing, as well as the Sentencing Guidelines, the Court is prepared to go forward now." App'x at 81. After minimal discussion about Wilson's challenges to the PSR, the court stated, "All right. Well, the Court finds the presentence investigation report to be accurate and I'm going to accept it and I'll make it part of the record and accept the factual information, as well as the Guideline application." App'x at 82-83. Wilson's attorney briefly argued why a sentence below the statutory maximum was appropriate on Count One, and Wilson made a statement to the court, apologizing for his conduct and asking for leniency.

The remainder of the sentencing proceeding concerned letters of support submitted by two members of Wilson's family. First, Wilson's biological father, Dwight Bradford, wrote a letter in support of his son. Bradford, a retired correction officer, wrote that he believed that Wilson's present circumstances were due to Wilson's unstable childhood stemming from

2

Bradford's separation from Wilson's mother. He wrote, however, that Wilson is now a parent to four children, and that his children adore him and he is a loving father.

Wilson's wife, Ashley McCoy Wilson, also wrote letters of support. Ashley married Wilson on February 3, 2005. She was in the army from 2003 to 2008, and since 2008 had worked for a military contractor in the field of communications and held a secret security clearance. Wilson and Ashley have three children together, and Ashley has a fourth child from a previous relationship, whom Wilson has raised as his own child. On January 26, 2015, Ashley wrote a letter of support for Wilson. She stated that he embraced her daughter from a previous relationship as his own. She further stated that, when she was deployed to Iraq and Afghanistan from October 2006 to January 2008, Wilson cared for their children as a single father. She wrote that he is a compassionate and loving husband and father, and that his children have always been at the top of his priorities. Ashley also wrote that Wilson is very supportive of family and friends and that he is a kind, caring, and family-oriented man. She also wrote that their youngest child's birth while he was incarcerated forced him to accept responsibility for his actions and poor choices, and that his daughter has only seen him twice.

Following the submission of that letter, on April 5, 2015, Wilson's youngest child was admitted to the pediatric ICU with seizures and hypertension associated with renal failure and required a ventilator and dialysis. Wilson requested to be released from prison so that he could see his daughter, but that request was denied. Probation contacted Ashley on April 16, 2015. At that time, she stated that her daughter was doing much better, but was still at risk. She stated that she expected her daughter to be moved out of the ICU in a few days, if her condition continued to improve. At that time, Ashley also stated that Wilson only met the child twice and did not develop a relationship with her. She stated that Wilson did not ask about his daughter until her hospitalization, and she wondered if he was using his daughter's illness to get out of jail.

Ashley was also interviewed by federal agents years earlier, in May 2013, after Wilson's arrest. At that time, she stated that she was aware that Wilson had a criminal history involving drug charges. She stated that he never had a job and she knew he sold illegal drugs. She further stated that, since 2008, Wilson often left town for months at a time, and she knew he had girlfriends in other states. In the interview with probation, apparently at the time of her child's hospitalization, she again stated that Wilson would leave for months at a time during their ten-year relationship, and he would not say when he planned to return. She stated that she has always been the sole provider for the family and was in the dark when it came to his illegal activities and relationships with other women. She requested a divorce before she became pregnant with their youngest child, and she stated that he used the pregnancy as a way to keep her tied to him. She described Wilson as manipulative and selfish. She stated that she plans to file for divorce. She noted, however, that despite how she feels about her husband, her older children love him and he is a good father when he is around them.

On May 19, 2015, Ashley wrote a second letter to the court. She stated that she was under extreme duress and stress during the April interview due to the hospitalization of her daughter. She stated that although she was unaware of many of her husband's actions outside the home, they had a normal marriage with ups and downs, and she reiterated her view that Wilson is a good father.

3

The district court took great issue with the letters submitted by Bradford and Ashley. At sentencing, the following colloquy took place.

THE COURT: Mr. Wilson, going through your background and the presentence investigation report, it's amazing to me that you've been able to stay out of prison as long as you have. I really feel that the people in the back of the courtroom either have to be oblivious to your entire life history or they just don't care. Your biological father, is he back there?

MR. BRADFORD: Yes, I am.

THE COURT: I have your letter. You suggest in your letter that your son has made unhealthy choices due to his difficult upbringing and that you don't believe he's a typical criminal because he's spent the last 10 years dedicating himself to taking care of his children.

MR. BRADFORD: That's right.

THE COURT: That is not true. If you knew anything about your son and what he's been doing for the past 10 years, you'd know it isn't true. I'm offended that you would send the Court a letter like that, without even addressing the facts which are in the presentence investigation report, which he's admitted to.

MR. BRADFORD: I think, your Honor, what I'm saying is that, like, the last – I've not been for five years now, but I worked in the New York State –

THE COURT: I know you worked with the State Department of Corrections. That's why I'm offended that you would send such a letter.

MR. BRADFORD: And because of my background is why I sent the letter. Over the course of 25 years I've had contact with probably thousands of inmates, thousands of inmates who probably most of them had drug or alcohol problems or substance abuse problems. Many of them, if not all of them, had some kind of a traumatic background history that started them off into doing some of the criminal behavior that they got involved in and, ultimately, ending up going to state prison. One of the things that I found out is that when we administer treatment to those folks, many of them do not recidivate. Many of them don't. But I think we had to improve a problem. In that letter I also stated I take some blame for this.

THE COURT: You should take some blame for it.

MR. BRADFORD: I take the blame --

THE COURT: But more than that, you should have your eyes open. And I don't know how you've dealt with your other people when you were working for the

4

Department of Corrections, but to be oblivious to the continuing criminal conduct of your son and finding excuses for him is not going to help him at all. In fact, if anything, it's going to exacerbate the situation. People like you bother me because you're in a position to help people. And instead of doing that, you're finding excuses for him. As I say, I'm offended by your letter.

MR. BRADFORD: Well, I didn't intend to offend you.

THE COURT: I'm sure you did not. That's the point I'm making is that it does.

MR. BRADFORD: And for that, I apologize. But my intent was to be honest as the way I see it and as the way I've had to see it for the State of New York.

THE COURT: All right. And as far as your spouse. Ashley Wilson there, too? Ms. Wilson, you were interviewed by agents in 2013. You gave them one story then. Then you write a letter in January of this year, which you retracted all that and give them another story. Then you talk to the probation office and you go back to the first story that you gave the agents in 2013 and very explicitly point out that your husband was never around. Now, let me just refer to what you did tell them. It's all in the report here which you agreed to – your husband has agreed to as being factually correct. You state that the majority -- you knew he was involved with dealing drugs but you didn't care. During your 10-year relationship, he would leave town for months at a time. He would not say when he planned to return. He spent more time away from home than with you and your children. Consequently, you were the sole provider for the family and always in the dark when it came to his illegal activities and his relationships with other women. You stated that you stayed with him because you felt guilty about divorcing the father of your children. And now you intended -- according to your statements -- in April you intended to ask for a divorce. You described your husband as very manipulative and selfish and explains his ability to twist things and make you feel guilty. You planned to end the relationship and file for divorce. And then you send a letter to the Court saying what a good person he is.

MS. WILSON: Excuse me, sir, in writing that letter, I just found out that our newborn was diagnosed with cancer -- or, excuse me –

THE COURT: I have that in your letter, as well.

MS. WILSON: Right.

THE COURT: That was the letter. I'm talking about the statements you made to probation, as well as the agents.

MS. WILSON: Right. He called me while I was in the hospital alone just finding out these circumstances. A lot of --

5

THE COURT: So you made up all these stories, made up all these lies because you were –

MS. WILSON: I'm not saying I lied about anything in my statement. I spoke words out of frustration, out of anger of dealing with the circumstances of this child on my own.

THE COURT: Which were the same words that you gave the agent two years before when there was no frustration.

MS. WILSON: The two years -- I wrote to Miss Melissa Tuohey, the lawyer, I did not say anything negative about him. I was under complete duress and stress when the probation woman called me. I was in the middle of the hospital when she called me.

THE COURT: 2013, you weren't under stress, were you?

MS. WILSON: In 2013, I was under stress. I –

THE COURT: When you gave the statements to the agents.

MS. WILSON: I was --

THE COURT: You gave the statements to the agents just as I described now, which you, again, gave to probation, which is an arm of the Court. If you lied to the agents and you lied to probation, you committed a felony; do you understand that?

MS. WILSON: I'm not saying I lied about any statement.

THE COURT: I'll accept your representation you made to probation and the agents as being accurate. All right.

MS. WILSON: What I'm saying –

THE COURT: What I'm telling you is be careful. You're making representations before this Court which may result in charges being brought against you. Do you understand that?

MS. WILSON: Yes.

THE COURT: Ms. Tuohey, you have to be careful about things you present to this Court on behalf of your client, as well. If they have to submit things on their own, fine. But be careful. The public defender's office should be aware of that. I am so upset with the way this has been handled. I'm going to request the United States Attorney's Office provide a copy of the sentencing minutes to the agency

6

which is employing Ms. Wilson. There's something wrong here and there's lying going on and being presented to this Court as being factual. Would you follow up on that and let me know?

[GOVERNMENT]: I will, your Honor.

App'x at 88-93. At that point, the district court sentenced Wilson to ten years' imprisonment on Count One and a consecutive two years' imprisonment on Count Two, with no further explanation. Following the sentencing proceeding, the AUSA requested that the district court permit Ashley to be heard on whether the sentencing transcript should be sent to her employer, noting that complying with the court's order would be in contravention of the policy of its office. Thereafter, on August 21, 2015, the district court entered an order stating, "The Court hereby ORDERS that the previous Oral Order directing the U.S. Attorney to send a copy of Defendant Wilson's sentencing transcript to the agency employing the Defendant's wife is VACATED. Copies of the sentencing transcript will be provided by the Court." App'x at 10.

We find no ground on which to vacate Wilson's sentence. First, the district court properly calculated the Guidelines range. Wilson, in a pro se submission, makes two challenges to that calculation. First, he argues that he should not have received a six-level enhancement under 2014 U.S.S.G. § 2B1.1(b)(2), which was applicable at the time of his sentencing, for conduct involving 250 or more victims. He contends that his criminal scheme had only one victim, the United States government; in his view, the individuals whose identifying information he co-opted were not victims because there is no evidence that they suffered pecuniary harm or had to spend time resolving credit problems as a result of the scheme. This argument is unavailing. The applicable Guidelines made clear that "in a case involving means of identification[,] 'victim' [includes] . . . any individual whose means of identification was used unlawfully or without authority," whether or not the individual suffered pecuniary harm. 2014 U.S.S.G. § 2B1.1 cmt. n.4(E). There is no dispute that Wilson's scheme involved the use of more than 250 individuals' means of identification. It therefore involved more than 250 victims. *See United States v. Jesurum*, 819 F.3d 667, 670-73 (2d Cir. 2016).

Wilson also challenges the district court's application of a 16-level enhancement based on an intended loss amount of more than $1 million, rather than a 14-level enhancement based on a loss amount of $414,886. "The court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. 3(C). Because of the district court's "unique position to assess the evidence and estimate the loss based upon that evidence . . . the court's loss determination is entitled to appropriate deference." *Id.* "Facts in support of a sentencing calculation need only be proven by a preponderance of the evidence, and the district court's findings will not be disturbed unless clearly erroneous." *United States v. Halloran*, 821 F.3d 321, 341 (2d Cir. 2016) (quoting *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir. 1993)). The district court's finding that the loss amount was in excess of $1 million was not clearly erroneous, and the district court appropriately considered Wilson's co-conspirator's contribution to the intended loss amount, even though Wilson was not charged with conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B).

Although the district court did not err in calculating Wilson's Guidelines range, that is not the only way a district court can commit procedural error in sentencing. As noted, a district

court "also errs procedurally if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact. Moreover, a district court errs if it fails adequately to explain its chosen sentence . . . ." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (citation and internal quotation marks omitted). However, we do not require "robotic incantations that the district court has considered each of the § 3553(a) factors," *id.* at 193 (internal quotation marks omitted), and we "presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors," *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006). Further, on plain error review, we will excuse a district court's failure to provide an oral explanation for its sentence where "the district court has adopted the presentence investigation report in open court and the factual findings in the report are adequate to support the sentence." *United States v. Pruitt*, 813 F.3d 90, 92 (2d Cir. 2016). Given the district court's statement at the beginning of the sentencing proceeding that he reviewed the PSR, the sentencing memoranda, and all pertinent information relevant to sentencing, and given that we review only for plain error because this objection was not preserved, we conclude that the district court did not commit a plain procedural error. *See United States v. Wagner-Dano*, 679 F.3d 83, 89 (2d Cir. 2012). To the extent Wilson argues that the district court based its sentence not on the legally relevant factors, but on its anger at the letters submitted by his relatives, a fair reading of the transcript shows that Wilson has inverted cause and effect: the court did not impose a significant sentence because it was angry about the letters; rather, it was angry about the letters because they attempted to excuse behavior that the court found deserving of a significant sentence.

Nonetheless, we are troubled by the district court's conduct in this case. In particular, it was inappropriate for the district court to threaten Ashley with prosecution for committing an unnamed felony based on her statements, which were not made under oath and primarily concerned her subjective views on whether Wilson was a good husband and father. It was also inappropriate to send the sentencing transcript to Ashley's employer under these circumstances, especially without permitting her an opportunity to be heard. We are also concerned by the district court's unwarranted reaction to Bradford's letter. It is an understandable human reaction for friends and relatives of a defendant facing a prison sentence to overlook the defendant's flaws and give the sentencing judge the most positive possible account of his better qualities. In doing so, ordinary people may not choose their words with literary precision or nuance. That does not mean they are lying or attempting to deceive the court. Even if a district court were to find that letters submitted by a defendant's family members were dishonest, it is not clear what relevance such a finding would have to the defendant's sentencing proceeding or to the § 3553(a) factors. While it is appropriate for a sentencing judge to condemn the defendant's behavior, a judge does not have a free commission to castigate the defendant's relatives, who are not parties to the case and are present only to provide moral support to their loved one. Accordingly, the proper response to a district court's finding that letters in support are unpersuasive is to simply not give the letters any weight in determining the appropriate sentence for the defendant.

Finally, Wilson challenges the sentence as substantively unreasonable. A sentence is substantively unreasonable if it "'shock[s] the conscience,' constitutes a 'manifest injustice,' or is otherwise substantively unreasonable." *Aldeen*, 792 F.3d at 255 (alteration in original) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). "Our review for substantive unreasonableness is 'particularly deferential.'" *Id.* (quoting *United States v. Broxmeyer*, 699 F.3d

8

265, 289 (2d Cir. 2012)). "We will set aside sentences as substantively unreasonable only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *Id.* (citations and internal quotation marks omitted). Wilson's 120-month sentence on Count One was well below the Guidelines range of 168-210 months' imprisonment, and his 24-month sentence on Count Two was the mandatory minimum for the charge. "While we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted in the overwhelming majority of cases . . . ." *United States v. Messina*, 806 F.3d 55, 66 (2d Cir. 2015) (internal quotation marks omitted). Having reviewed the record, we hold that the term given was not substantively unreasonable.

We have considered the remainder of Wilson's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk