23-6525-cr
*United States v. Tompkins*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of October, two thousand twenty-four.

PRESENT:     JOHN M. WALKER, JR.,
             DENNIS JACOBS,
             SARAH A. L. MERRIAM,
                 *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

    *Appellee*,

      v.                                                     No. 23-6525-cr

TERREL TOMPKINS,

    *Defendant-Appellant*.

_____

FOR APPELLEE:                    MIRIAM L. GLASER DAUERMANN (Nicholas J. Moscow, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States

Attorney for the Eastern District of New York, Brooklyn, NY.

FOR DEFENDANT-APPELLANT:     ANDREW J. FRISCH, The Law Offices of Andrew J. Frisch PLLC, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Korman, *J.*).

**UPON DUE CONSIDERATION,** the judgment of the District Court entered on May 17, 2023, is **AFFIRMED**.

Defendant-Appellant Terrel Tompkins appeals from the District Court's judgment convicting and sentencing him after a jury trial of one count of possession of ammunition as a previously convicted felon,[1] in violation of 18 U.S.C. § 922(g)(1), and one count of attempted obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1).

The evidence at trial established the following. In the early morning hours of March 18, 2019, Tompkins fired two shots outside a bar in Queens; nobody was injured, and Tompkins left the scene. Police arrived shortly thereafter and reviewed footage from the security cameras located outside the bar. The officers then searched the area where it appeared Tompkins had been standing when he fired the shots and recovered two shell casings from the ground. Later that day, Tompkins texted a bartender and the bar's manager asking them, in Spanish, whether the tape had been deleted and asking the bartender to "delete the tape," referring, apparently, to the security camera footage. Gov't

---

[1] Tompkins was previously convicted of possession with intent to distribute heroin. *See United States v. Tompkins*, No. 1:12CR00102(ERK) (E.D.N.Y. May 21, 2014), ECF No. 21.

App'x at 166, 171. The manager replied that he could not delete the tape because the officers had gone "straight to the cameras" upon their arrival earlier that day. Gov't App'x at 166.

Tompkins was arrested on March 26, 2019, pursuant to a criminal complaint, and eventually charged by a superseding indictment with one count of possession of ammunition as a previously convicted felon and one count of attempted obstruction of justice based on his efforts to delete the security camera footage. On January 17, 2020, the last business day before the scheduled start of trial, the government disclosed that the FBI was unable to locate the shell casings recovered from the scene of the shooting. On January 18, 2020, Tompkins moved to dismiss Count One (the ammunition charge) based on spoliation of evidence or, in the alternative, for an adverse-inference instruction. On January 21, 2020, the District Court denied his motion, based primarily on its finding that there was no indication that the government had deliberately lost the casings.

At trial, the government introduced photographic evidence and expert testimony regarding the nine-millimeter casings found at the scene, including that they were Luger-branded and manufactured in Brazil by a company named "CBC." The officer who found the casings testified to their location, *see* Gov't App'x at 42-43, and the officer who collected the casings as evidence testified that they did not look "rusty," "dirty," or "weathered," *id.* at 65. At the charge conference, Tompkins renewed his request for an adverse-inference instruction, and the District Court again denied the request. On January 24, 2020, following a three-day trial, the jury found Tompkins guilty on both counts of the superseding indictment.

On July 26, 2021,[2] Tompkins's trial counsel moved to withdraw, and the District Court appointed new counsel the next day. On December 17, 2021, Tompkins moved through new counsel to vacate his conviction and to dismiss both charges against him, contending that his trial counsel had been constitutionally ineffective because he failed to arrange for inspection of the shell casings prior to their loss, in spite of Tompkins's requests that he do so. On March 14, 2022, after hearing oral argument on the issue, the District Court orally denied Tompkins's motions.

On May 1, 2023, the District Court sentenced Tompkins principally to 120 months' imprisonment and three years of supervised release. Tompkins contends on appeal that the District Court erred in denying Tompkins's pre-trial requests for dismissal based on spoliation of evidence and for an adverse-inference instruction, and in denying his post-trial motion to vacate the conviction and dismiss the charges based on ineffective assistance of counsel. He also requests that the case be remanded for resentencing based on Amendment 821 to the U.S. Sentencing Guidelines (the "Guidelines").

## I.      Pre-Trial Motion to Dismiss Based on Spoliation

"We review for abuse of discretion a district court's decision whether to dismiss a case on the ground that spoliation of evidence has deprived the defendant of a fair trial. We will reject the district court's factual findings in support of its decision only if they are clearly erroneous." *United States v. Greenberg*, 835 F.3d 295, 303 (2d Cir. 2016)

---

[2] Sentencing was delayed, apparently by Tompkins's refusal to participate in the pre-sentence investigation process. *See* Appellant's App'x at 7 (text order indicating that if Tompkins did "not consent to be interviewed for the presentence investigation report within the next month," it would be prepared without his input).

(citation omitted). "A criminal defendant moving for dismissal on the basis of spoliation of the evidence must make a two-pronged showing that the evidence possessed exculpatory value 'that was apparent before [it] was destroyed' and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). Whether a showing of bad faith is also required depends on whether the evidence is truly *exculpatory* or merely *potentially useful*:

> [W]hen the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld. . . . [T]he Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . [T]he failure to preserve this potentially useful evidence does not violate due process *unless a criminal defendant can show bad faith on the part of the police.*

*Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004) (citations and quotation marks omitted).

Tompkins argues that "the government's loss of the evidence made it impossible for the defense to confirm the reliability and credibility of the government's observations and conclusions." Appellant's Br. at 12. Specifically, he has argued throughout that the loss of the casings rendered him unable to effectively contest the interstate commerce element of the charge against him by limiting his ability to argue that the casings described at trial were not those discharged by the weapon he was seen firing in the surveillance video. *See, e.g.*, Appellant's App'x at 23-24, 163, 166. The government contends that "Tompkins has not identified any exculpatory value in the [c]asings or argued that such exculpatory value was clear before the [c]asings were lost." Appellee's

5

Br. at 26-27.

The District Court denied the motion to dismiss, making the following factual finding: "I don't see what motive they had to deliberately lose it. . . . I don't even see this as a [spoliation] case at all because I don't see anything that's deliberate." Appellant's App'x at 34-35. This finding of a lack of bad faith on the part of the government agents was not clearly erroneous, and the District Court's implicit finding that the evidence was potentially useful, but not exculpatory, was not an abuse of discretion. Although the casings could have been useful to Tompkins at trial, he has not shown that they were, themselves, exculpatory. There was ample photographic and testimonial evidence of the condition of the casings. Accordingly, we conclude that the District Court did not abuse its discretion in denying the motion to dismiss based on spoliation.

## II.    Request for Adverse-Inference Instruction

Nor did the District Court abuse its discretion[3] in denying Tompkins's request for an adverse-inference instruction regarding the loss of the casings.

> [A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)

---

[3] We review the denial of an adverse-inference instruction for abuse of discretion. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 141 (2d Cir. 2012).

6

(citation and quotation marks omitted).[4]

The government concedes that it had an obligation to preserve the casings. Tompkins argues that the prosecution's negligence was a sufficiently "culpable state of mind" to "empower a jury to draw an adverse inference against the government for losing key evidence." Appellant's Br. at 5-6 (citing Appellant's App'x at 24). The District Court found that Tompkins had proffered no evidence of "any culpable intent, however you define the word culpable," and that there was no "basis to infer some sort of culpable intent" in this case. Appellant's App'x at 186. We discern no error in this finding. The failure to establish a culpable state of mind is fatal to Tompkins's claim, so we need not determine in this context whether the casings were relevant and would have supported his defense. Moreover, as previously noted, significant evidence of the condition of the casings and their provenance was introduced at trial, including photographs that the jury could see for itself. Accordingly, any error in the failure to give the instruction would have been harmless. We therefore find no abuse of discretion in the District Court's denial of Tompkins's request for an adverse-inference instruction.

## III. Claim of Ineffective Assistance of Counsel

"We review ineffective assistance of counsel claims *de novo*." *United States v. Kaid*, 502 F.3d 43, 45 (2d Cir. 2007) (per curiam). When presented with "a claim for

---

[4] We note that our Court has not yet determined in a precedential opinion whether this standard, applicable in civil cases, is equally applicable in criminal cases, but several unpublished summary orders have applied it in criminal matters. *See*, *e.g.*, *United States v. Davis*, 531 F. App'x 65, 68 (2d Cir. 2013); *United States v. Garcia*, 596 F. App'x 24, 26 (2d Cir. 2015). Because both parties rely on *Residential Funding Corp.*, and make no argument that its reasoning does not apply here, we assume without deciding that it does.

ineffective assistance on direct appeal, we may do one of three things: (1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent § 2255 petition; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before us." *United States v. Leone*, 215 F.3d 253, 256 (2d Cir. 2000). We may decide ineffective assistance claims on direct appeal where, as here, "the factual record is fully developed" and the outcome is clear. *United States v. Bodnar*, 37 F.4th 833, 845 (2d Cir. 2022) (citation omitted). The District Court held a post-trial hearing addressing the ineffective assistance claim, and Tompkins's trial counsel submitted a sworn affidavit attesting to his own deficient performance. *See* Appellant's App'x at 126-27 (Decl. of Michael D. Weil). "[T]he defendant has new counsel on appeal and he argues no ground that is not fully developed in the record." *United States v. Finley*, 245 F.3d 199, 204 (2d Cir. 2001).

"A defendant claiming ineffective assistance must (1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms'; and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984)).

Assuming, without deciding, that the performance of Tompkins's trial counsel fell below a reasonable professional standard, Tompkins's claim fails on the prejudice prong. Indeed, Tompkins's counsel expressly conceded as much at the post-trial hearing: "I can't show you what *Strickland* and its progeny would otherwise require, which is something that would change the outcome of the trial." Appellant's App'x at 191. The evidence

8

regarding the casings at trial was strong – including photographs of the casings that clearly showed the "CBC" stamp and expert testimony attesting to their Brazilian provenance – and Tompkins makes only conclusory arguments that a defense examination of the casings themselves would have altered the outcome of his trial. We therefore determine that Tompkins has failed to meet the prejudice prong of *Strickland*. Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," *Strickland*, 466 U.S. at 691, we affirm the District Court's denial of Tompkins's motion to dismiss on grounds of ineffective assistance of counsel.

## IV.    Sentencing Guidelines Amendment 821

Finally, Tompkins asks that we remand this matter to the District Court to recalculate the advisory Guidelines range in light of Amendment 821, under which "the Guidelines were amended, effective November 2023, so that just one criminal history point (not two points) is added where the defendant otherwise has at least seven criminal history category points, not six as here." Appellant's Br. at 21 (citing U.S.S.G. § 4A1.1(e)). Tompkins asserts, and the government does not dispute, that application of the Amendment would result in his Criminal History Category being reduced from IV to III. But the government contends that this Court "is not the appropriate forum for addressing the effect of Amendment 821," Appellee's Br. at 59 (citing *United States v. Colon*, 961 F.2d 41, 45-46 (2d Cir. 1992)), and that "the application of Amendment 821 to this case is best contextualized by the district court before it is evaluated on appeal." Appellee's Br. at 61.

We make no finding as to the effect of Amendment 821 on Tompkins's case; the District Court should make that determination in the first instance. *See United States v. Rivera*, 115 F.4th 141, 153-54 (2d Cir. 2024) (rejecting defendant's request to remand case for resentencing under Amendment 821, noting that "the § 4A1.1 amendment effects a substantive change to the Guidelines" and "[a]ny argument seeking to retroactively reduce [the defendant's] sentence on this ground . . . must be raised before the district court in the first instance"); *Colon*, 961 F.2d at 45-46; *United States v. Jesurum*, 819 F.3d 667, 672 (2d Cir. 2016) (explaining that a reviewing court "may not, in the first instance, apply post-sentence amendments that embody a substantive change to the Guidelines" (citations and quotation marks omitted)). Tompkins may bring a motion pursuant to 18 U.S.C. § 3582(c)(2) in the District Court, seeking a reduction in sentence based on the application of Amendment 821. *See Jesurum*, 819 F.3d at 673 (A defendant "must instead direct any request for relief under [a Guidelines amendment] to the district court in the first instance.").

* * *

We have considered Tompkins's remaining arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court